**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PARKVIEW HOMES, INC.,

        Plaintiff,

v.                                                         Case No. 05-CV-72708-DT

CITY OF ROCKWOOD, et al.,

        Defendants.

                                       /

**ORDER DENYING PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION**

        Pending before the court is an "Application . . . for Temporary Restraining Orders and Preliminary Injunctions," filed by Plaintiff Parkview Homes, Inc. ("Parkview") on July 8, 2005.  On July 14, 2005, the court denied the application in part, as to the request for a temporary restraining order.  The court held a hearing on the request for a preliminary injunction on October 3, 2005.  For the reasons stated below, the request for a preliminary injunction will be denied.

**I.  BACKGROUND**

        Plaintiff initiated this action on July 8, 2005, against Defendants City of Rockwood, Philip Smalley, Patricia Hewitt, Ted Domitrz, Scott Rogers, Mark Scafidi, Shirl L. Schelevitz, and John Wasner.  Defendant Philip Smalley is the Mayor of Rockwood, Michigan, and all other individual defendants are members of the city council of Rockwood.  Plaintiff's complaint asserts five counts against Defendants: Violation of 42 U.S.C. § 1983 (Count I); Conspiracy to Violate 42 U.S.C. § 1983 (Count

II); Violation of Racketeer Influenced and Corrupt Organizations Act (RICO) and

Tortious Conduct (Count III); Injunctive Relief as to Moratorium (Count IV); and

Injunctive Relief as to Repeal of Cluster Housing Ordinances (Count V).

Unless otherwise noted, the following recitation of facts is undisputed:

Parkview has an interest in a 16.75 acre parcel of land located in the City of

Rockwood.  (Defs.' Proposed Finding of Fact # 1; Pl.'s 9/30/05 Resp. at 1.)   The

property at issue in this lawsuit contains at least five (5) acres of wetlands regulated by

the Michigan Department of Environmental Quality ("MDEQ").  (Defs.' Proposed Finding

of Fact # 2; Pl.'s 9/30/05 Resp. at ¶ 2 (accepting "Paragraph [2] with [a] qualification").)

The City of Rockwood ("Rockwood") has adopted a Zoning Ordinance pursuant

to the City and Village Zoning Enabling Act, MCL 125.581 *et seq.*  Under Rockwood's

Zoning Ordinance, Parkview's property is zoned RA-2, Single-Family Residential.  The

minimum lot area in the RA-2 zoning district is 7,200 square feet with a minimum lot

width of 60 feet.  (Defs.' Proposed Finding of Fact # 3; Pl.'s 9/30/05 Resp. at 1.)   Under

Rockwood's Zoning Ordinance, a land zoned for single-family development under the

RA-1, RA-2 and RA-3 zoning classifications may also be developed under the different

open space and cluster options permitted under Michigan law.  MCL 125.584b.  (Defs.'

Proposed Finding of Fact # 4; Pl.'s 9/30/05 Resp. at 1.)

Rockwood's Zoning Ordinance creates a subdivision open space option, Section

5.2103, and a cluster development provision, Section 5.504, within single-family

residential districts.  Both the subdivision open space option and cluster development

provision are designed to allow for more creative approaches to residential

development.  (Defs.' Proposed Finding of Fact # 5; Pl.'s 9/30/05 Resp. at 1.)  Since the

open space option and cluster development provision of the Zoning Ordinance have been in effect, no property within the City of Rockwood has been developed under these options.  (Defs.' Proposed Finding of Fact # 6; Pl.'s 9/30/05 Resp. at 1.)

Beginning in 2002, Parkview began presenting informal development proposals to Rockwood.  (Defs.' Proposed Finding of Fact # 7; Pl.'s 9/30/05 Resp. at 1.)  In January 2002, representatives of Parkview met with Rockwood's planning consultant, McKenna Associates, to discuss a development under the subdivision open space option.  (Defs.' Proposed Finding of Fact # 8; Pl.'s 9/30/05 Resp. at 1.)  According to Defendants, Parkview never applied to Rockwood for approval of a development under the subdivision open space option.  (Defs.' Proposed Finding of Fact # 9.) Parkview qualifies this, however, by asserting that in 2002 and 2003, Plaintiff had discussions with representatives of Rockwood with respect to its open space option and it became apparent that due to the physical conditions of Plaintiff's property this option was not feasible.  (Pl.'s 9/30/05 Resp. at 2.)

In December 2004, Parkview's principal, Lawrence Sukenic, met with representatives of Rockwood to discuss the concept of a cluster development of the 16.75 acre property involved in the lawsuit.  At the time of this meeting, no application for site plan approval for a cluster development had been filed.  (Defs.' Proposed Finding of Fact # 10; Pl.'s 9/30/05 Resp. at 1; *see also* Pl.'s 9/29/05 Amended and Corrected Proposed Finding of Fact # 6.)  On March 7, 2005, Lawrence Sukenic made an appearance before the Planning Commission for the City of Rockwood.  Although no application for site plan approval had been submitted, Mr. Sukenic made an informal presentation about a concept for development on the property at issue in this lawsuit.

(Defs.' Proposed Finding of Fact # 11; Pl.'s 9/30/05 Resp. at 2; *see also* Pl.'s 9/29/05

Amended and Corrected Proposed Finding of Fact # 7.)[1]

At an April 4, 2005 meeting of the Planning Commission for the City of

Rockwood, several residents from the subdivision adjoining Parkview's property voiced

objection to Rockwood's cluster development option.  (Defs.' Proposed Finding of Fact

# 12; Pl.'s 9/30/05 Resp. at 1.)  At the May 18, 2005, meeting of the Rockwood City

Council, a petition was presented, signed by more than 500 city residents, which

requested that the City Council remove the cluster housing provision from the City of

Rockwood's Zoning Ordinance.  (Defs.' Proposed Finding of Fact # 13; Pl.'s 9/30/05

Resp. at 1.)

At the May 18, 2005, City Council Meeting,[2] a resolution was unanimously

approved which initiated a moratorium against the approval of any building permits for

cluster housing for a period of 90 days.  (Defs.' Proposed Finding of Fact # 16; Pl.'s

9/30/05 Resp. at 1.)  The moratorium provides, in pertinent part, that "the Planning

Commission and the Building Official or other individual authorized to issue building

permits for the City of Rockwood shall not issue any further building permits for the

construction of cluster housing in the City of Rockwood until the expiration of this

Resolution [90 days]."  (Moratorium, Pl.'s Ex. 121.)

---

[1] The parties dispute whether Mr. Sukenic's appearance was unscheduled.
(Defs.' Proposed Finding of Fact # 11; Pl.'s 9/30/05 Resp. at 2.)  This dispute, however,
is not material to the court's analysis.

[2]The Rockwood City Council is the legislative body for Rockwood.  (Defs.'
Proposed Finding of Fact # 14; Pl.'s 9/30/05 Resp. at 2.)  Parkview asserts that
Rockwood's City Council has both legislative and administrative functions. (Pl.'s 9/30/05
Resp. at 1.)

According to Defendants, the purpose of the moratorium was to allow the City Council to explore alternatives to the cluster development. (Defs.' Proposed Finding of Fact # 17.) Parkview, however, maintains that the purpose of the moratorium was to prevent Parkview from proceeding with its cluster housing development and to appease a vocal group of residents who have been pushing for deletion of cluster housing from the Rockwood Zoning Ordinances. (Pl.'s 9/30/05 Resp. at 2.)

Further, Defendants assert that at the time Rockwood adopted the moratorium, Parkview had not filed an application for a building permit for the cluster housing plan nor had any preliminary work been done on the property toward construction of a residential development. (Defs.' Proposed Finding of Fact # 18.) This fact was confirmed during direct and cross examination of Lawrence Sukenic at the October 3, 2005 hearing.

Defendants assert that in June of 2005, after the City of Rockwood adopted a moratorium on cluster development, a proposal was submitted to the Planning Commission to adopt a Planned Unit Development (PUD) District to replace the cluster option. (Defs.' Proposed Finding of Fact # 19.) In August 2005, the City Council extended the moratorium on cluster development for another 90-day period. (Defs.' Proposed Finding of Fact # 20; *see also* Def. Ex. 509.) The City of Rockwood has yet to either formally repeal the cluster development provision or adopt a new Planned Unit Development provision to replace it. (Defs.' Proposed Finding of Fact # 21.)

Defendants also maintain that Parkview has never applied for a variance or formally submitted a formal plan for any development on the property at issue in this lawsuit. (Defs.' Proposed Finding of Fact # 22.) Parkview disputes this fact by stating

5

that no variance is required.  (Pl.'s 9/30/05 Resp. at 2.)  Parkview further argues that it

could not apply for a building permit because the moratorium prevented them from filing

any building applications.[3]

## II. STANDARD

"The purpose of a preliminary injunction is merely to preserve the relative

positions of the parties until a trial on the merits can be held."  *Univ. of Texas v.*

*Camenisch*, 451 U.S. 390, 395 (1981).  The court must consider four factors in

determining whether to grant a preliminary injunction:

> (1) likelihood of success on the merits;
> (2) potential for irreparable harm;
> (3) potential of adverse public impact; and
> (4) potential harm to the plaintiff weighed against the potential harm to the
> defendant.

*Taubman Co. v. Webfeats,* 319 F.3d 770, 774 (6th Cir. 2003).  None of these factors,

standing alone, is a prerequisite to relief; rather, they must be balanced.  *In re*

*DeLorean,* 755 F.2d 1223, 1229 (6th Cir. 1985).  Thus, "no single factor is determinative

as to the appropriateness of equitable relief."  *Roth v. Bank of the Commonwealth*, 583

F.2d 527, 537 (6th Cir. 1978).

The Sixth Circuit has long recognized that "[t]he object and purpose of a

preliminary injunction is to preserve the existing state of things until the rights of the

parties can be fairly and fully investigated."  *In re DeLorean*, 755 F.2d at 1229 (quoting

*Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur, et al.,* 53 F. 98,

---

[3]The court is not persuaded by this argument, inasmuch as the moratorium, by
its terms, only prohibits the City of Rockwood from issuing building permits.  As
discussed at the hearing, the moratorium does not expressly prohibit individuals from
filing applications, nor does it permit the City of Rockwood from considering them.

101 (6th Cir. 1892)).  In the case at bar, the court finds that a preliminary injunction is not warranted.

### III.  DISCUSSION

As a preliminary matter, it is not entirely clear to the court what exact relief Parkview seeks in its request for a preliminary injunction.  Due to the progression of the briefs, and the inexact language that Parkview sometimes utilizes, the record is a bit murky with respect to what action Parkview seeks to enjoin.  At a minimum, Parkview clearly asks the court to enjoin Rockwood from enforcing any moratorium on issuing building permits.  Parkview also requests that the court restrain Rockwood from repealing the cluster housing ordinance.  Additionally, if the moratorium is set aside, Parkview seeks some form of judicial overview regarding the building permit application process.  As expressed at the hearing, it is possible that Parkview seeks further relief in the form of some sort of declaration that Parkview may begin construction.  For the reasons stated below, the court declines to enjoin or restrict any of these actions.

### A.  Likelihood of Success

Parkview has not demonstrated a likelihood of success on the merits.  Under Michigan law, "[t]he power to zone and rezone property is a legislative function." *Essexville v. Carrollton Concrete Mix, Inc.,* 673 N.W.2d 815, 819 (Mich. Ct. App. 2003); *see also Schwartz v. Flint*, 395 N.W.2d 678, 683 (Mich. 1986) ("[Z]oning is primarily a legislative function, subject to judicial review only to determine 'whether the power, as exercised, involves an undue invasion of private constitutional rights without a

reasonable justification in relation to the public welfare.' ") (quoting *Norwood Builders v.*

*City of Des Plaines,* 471 N.E.2d 634 (Ill. App. Ct. 1984)).[4]

Parkview's motion for preliminary injunction and hearing brief are noticeably light

on law in support of their application, and it is somewhat unclear on what theory

Parkview's application lies.  It appears that Parkview is asserting substantive due

process claim in its complaint.  The court, however, is not convinced that a substantive

due process claim is ripe for judicial review.  The Sixth Circuit has held that "[a] claim

that a government regulation constitutes a taking of property in violation of the fifth

amendment will not be ripe for adjudication 'until the government entity charged with

implementing the regulations has reached a final decision regarding the application of

the regulations to the property at issue.'" *Seguin v. Sterling Heights,* 968 F.2d 584, 587

(6th Cir. 1992) (quoting *Williamson County Regional Planning Comm'n v. Hamilton*

---

[4] Indeed, Michigan courts review zoning challenges on an extremely deferential basis.  Courts have held:

> [W]e deem it expedient to point out again, in terms not susceptible of misconstruction, a fundamental principle: this Court does not sit as a superzoning commission. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises.

*Essexville v. Carrollton Concrete Mix, Inc.*, 673 N.W.2d 815, 820 (Mich. Ct. App. 2003) (quoting *Brae Burn, Inc. v. Bloomfield Hills,* 86 N.W.2d 166 (Mich. 1957)).

*Bank,* 473 U.S. 172, 186 (1985)).  This requires that a plaintiff asserting a fifth

amendment takings action with respect to a zoning decision must show that he has (1)

applied for and been denied a variance and (2) brought a just compensation claim to

seek redress under state law.  *Id.*  In this case, however, it is undisputed that Parkview

has never even applied for a building permit, let alone sought a variance.  Further, there

is no evidence that Parkview has applied for or been denied just compensation by the

State of Michigan.   Thus, a substantive due process claim is not yet ripe for review by

this court.

Parkview also appears to be asserting a Fourteenth Amendment equal

protection claim.  Parkview argues that the moratorium and (perhaps) the proposed

alternative zoning ordinance is directed solely at Parkview in a discriminatory fashion.

Parkview claims that Defendants are attempting to halt Parkview's development

because its housing is perceived to be primarily for a low income or minority class of

persons.  As with the substantive due process claim, however, this claim is not yet ripe

for review.   *See Seguin,* 968 F.2d at 588 ("Where a plaintiff challenges a zoning

regulation 'as applied,' as opposed to making a facial challenge to the regulation, the

courts have held that the *Williamson* final decision requirement must be met.") (citing

*Williamson County Regional Planning,* 473 U.S. 172).  As discussed above, Parkview

has not established that the *Williamson* requirements have been met, and thus any

equal protection claim is unlikely to be successful.[5]

---

[5] To the extent that Parkview argues the zoning ordinance is not facially neutral,
the court cannot accept this argument.  First, the moratorium applies to all building
permits for the development of cluster housing.  That Parkview *may* be the only
developer considering cluster housing development is incidental.  Second, Rockwood

Further, under the line of cases discussed in *Schubiner v. West Bloomfield Twp.*,

351 N.W.2d 214, 219 (Mich. Ct. App. 1984), Parkview has no vested right to build its

proposed construction sufficient to prevent Rockwood from amending its zoning

ordinances.  In *Schubiner*, the Michigan Court of Appeals conducted a thorough review

of Michigan law to set forth the following salient principles:

> Under all of the cases cited herein a building permit, or its counterpart, a permit to commence operations, is the *sine qua non* for obtaining "vested rights".  An approved site plan is not a permit to build.  The features of reliance and estoppel which may give rise to a vested right under a building permit do not necessarily arise under an approved site plan which, by statute, merely signifies that the proposed use complies with local ordinances and federal statutes. M.C.L. § 125.286e; M.S.A. § 5.2963(16e).  Furthermore, the grant of a permit to build does not in itself confer on the grantee "vested rights". Actual construction must commence. The making of preparatory plans, landscaping and the removal of an existing structure is not sufficient.  Where the building permit has been applied for but has not been issued, "vested rights" are not acquired even though substantial sums have been expended by the applicant.

*Id.* (internal citations omitted).  In this case, no building permit has been obtained, or

even applied for, and no construction has begun.  Although Parkview argues that it

received "encouragement" for its project, it cites no authority for the proposition that

encouragement is enough to obtain a vested property interest.  Indeed, under

*Schubiner*'s clearly articulated principles, there can be no serious debate that Parkview

does not have the requisite vested property rights so as to bar either the passage or the

application of amended zoning ordinances.

Finally, the court finds Parkview has not established a likelihood of success on its

claim that Rockwood's moratorium constitutes an unconstitutional taking of Parkview's

---

has yet to pass an amended zoning ordinance into law.  Thus, it is impossible to find
that any hypothetical ordinance is not facially neutral.

property.  The Supreme Court has held that regulatory takings cases are characterized

by *ad hoc*, highly factual inquiries.  *See Tahoe-Sierra Preservation Council, Inc. v.*

*Tahoe Regional Planning Agency,* 535 U.S. 302, 322 (2002)*.*  As Justice Holmes first

recognized, regulations that go "too far" will result in a taking.  *Id.* at 326 (citing

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).  The court finds that

weighing all the facts in this case, Rockwood's two 90-day moratoriums did not amount

to a regulatory taking of Parkview's property.  First, Parkview was at all times still able to

develop the property consistent with the underlying zoning use,  RA-2, Single-Family

Residential.  Moreover, Parkview has not persuaded the court that a 180-day

moratorium, which allows Rockwood time to review and possibly amend its cluster

housing ordinances goes "too far" and thus constitutes a taking.  Indeed, in *Tahoe-*

*Sierra*, the Supreme Court upheld a far more restrictive moratorium and noted that:

> Unlike  the "extraordinary circumstance" in which the government deprives a property owner of all economic use, . . . moratoria like Ordinance 81-5 and Resolution 83-21 are used widely among land-use planners to preserve the status quo while formulating a more permanent development strategy.  In fact, the consensus in the planning community appears to be that moratoria, or "interim development controls" as they are often called, are an essential tool of successful development.

*Id.* at 337-338.  The court finds, under the facts and circumstances presented thus far,

Parkview is unlikely to succeed on its claim that the moratorium constitutes a "taking" of

its Parkview's property.[6]

---

[6]  Further, in light of this authority, the court declines to find that moratoria are an illegal exercise of legislative authority in general, or that this particular moratorium was an illegal exercise in particular.  Parkview argues that it has been unable to locate any authority in Michigan allowing the use of moratoria, and thus this moratorium is illegal. The court is not persuaded. It is *Parkview's* burden to persuade the court that an injunction is warranted, and in the absence of direct authority to the contrary, the court is reluctant to interfere in the legislative process of local government.  Moreover, as

For all these reasons, the court finds that Parkview has not established a likelihood of success on the merits.

### B.  Irreparable Harm

A movant seeking a preliminary injunction must prove that any claimed irreparable harm is imminent, with a substantial threat of impending injury.  *McDonald's Corp. v. Burger King Corp,* 87 F. Supp. 2d 722, 725 (E.D. Mich. 1999).  In evaluating irreparable harm, an important factor is whether the potential damages that would result from the defendant's continued action would be "economic in nature and fully compensable monetarily."  *Taubman*, 319 F.3d at 778.  If the plaintiff's damages are purely economic, the potential harm is not deemed to be irreparable.  *Id.* at 778.

Parkview has shown some degree of irreparable harm, to the extent it is unable to use its property in its preferred manner *at this time*.  Nonetheless, as Defendants point out, this case is ultimately a *takings* case, which in part seeks just compensation

---

discussed above, the United States Supreme Court has recognized the common and legitimate use of moritoria.  *See Tahoe-Sierra,* 535 U.S. at 337-338.  Further, while the court has not located any Michigan case directly on point, Michigan courts appear to at least implicitly recognize the validity of moratoria, especially where, as here, they are reasonable in scope and duration.  *See, e.g., Adams Outdoor Advertising v. East Lansing*, 483 N.W.2d 38, 44 (Mich. 1992) (Levin, J., dissenting) ("The city council began implementing the recommendations by enacting, in August, 1973, a moratorium that barred further placement of signs pending adoption of a new sign code. The moratorium remained in effect until the new code was enacted.") *Central Advertising Co. v. St. Joseph Tp.*, 337 N.W.2d 15, 18 (Mich. Ct. App. 1983) ("Although moratoria are not regarded favorably by the courts, this moratorium was to last only until a new ordinance relating to off-premises signs was adopted and presented to the court."); *Heritage Hill Ass'n, Inc. v. City of Grand Rapids*, 211 N.W.2d 77, 79 (Mich. Ct. App. 1973) ("The amended building code in the case at bar did not alter the provisions of the Grand Rapids Zoning Ordinance but rather only placed a moratorium on the issuance of building permits in a particular district of the city for a reasonably limited time."); *Guenther v. Plymouth*, No. 239902, 2003 WL 22204735, *1 (Sept. 23 ,2003) (noting existence of a moratorium preventing an application).

for the alleged deprivation of property rights.  "Just compensation," of course, is a monetary relief which Parkview may recover in the unlikely event it is ultimately successful.  Thus, the irreparable harm factor does not weigh strongly in favor of Parkview.

### C.  Public Interest

The public interest weighs in favor of denying the motion for preliminary injunction.  Parkview has not shown how the public interest is served by enjoined the application of the moratorium, or forcing Rockwood to review (or grant) Parkview's yet-to-be filed application for a building permit.  It is not the role of the courts to interfere in the legislative process, and Parkview has not persuaded the court that the moratorium was an invalid or illegal exercise of Rockwood's legislative powers.  Moreover, as discussed more fully at the hearing, the public would not be served by the initiation of a building project where, as here, it does not appear that Parkview has a strong likelihood of success on the merits.  Thus, consideration of the public interest weighs against issuance of an injunction.

### D.  Weighing the Harms

The harm that Defendants would experience if the court were to grant the injunction far outweighs the harm Parkview will experience if the court denies the motion.  Parkview is not prevented from developing its property in any way.  Indeed, the underlying property is zoned for residential development.  Further, it is not guaranteed that Parkview will necessarily be prevented from developing its property in the manner

13

in which it prefers.  If Rockwood in fact changes its zoning ordinances, it appears there will still be a mechanism in place for Parkview to apply for a building permit for its cluster housing plan.  If Parkview is denied, it may still seek a variance.  At this point, it is not clear that denying an injunction will prevent Parkview from developing its property or even from developing its current cluster housing project.

On the other hand, granting the injunction would effectively usurp the power of Rockwood to both legislate and adjudicate its zoning ordinances.  This factor thus weighs against granting an injunction.

The court thus finds that the balance of the appropriate factors weigh against granting the preliminary injunction.  The court is not persuaded that the status quo is best maintained by interfering with Rockwood's legislative process.

### IV.  CONCLUSION

IT IS ORDERED that Plaintiff's July 8, 2005 request for a preliminary injunction [Dkt. # 2] is DENIED.

          S/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated:  October 6, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 6, 2005, by electronic and/or ordinary mail.

          S/Lisa G. Teets
          Case Manager and Deputy Clerk
          (313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Orders\05-72708.PARKVIEW.PreliminaryInjunction.ZoningPropertyInterest.wpd