# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PARKVIEW HOMES, INC.,

       Plaintiff,

v.                                Case No. 05-CV-72708-DT

CITY OF ROCKWOOD, et al.,

       Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND
## DENYING PLAINTIFF'S MOTION TO AMEND AND MOTION TO COMPEL

Pending before the court is a "Motion to Dismiss, for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) or 12(b)(6)," filed by Defendants on November 9, 2005. Also pending are two motions filed by Plaintiff Parkview Homes, Inc. ("Parkview" or "Plaintiff"): a "Motion for Leave to File an Amended and Supplemental Complaint," filed on December 22, 2005, and a motion to compel, filed on December 30, 2005. The court has reviewed the briefs and concludes that no hearing is necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, Defendants' motion will be granted and Plaintiff's motions will be denied.

## I. BACKGROUND

Plaintiff initiated this action on July 8, 2005, against Defendants City of Rockwood, Philip Smalley, Patricia Hewitt, Ted Domitrz, Scott Rogers, Mark Scafidi, Shirl L. Schelevitz, and John Wasner. Defendant Philip Smalley is the Mayor of

Rockwood, Michigan, and all other individual defendants are members of the city council of Rockwood. Plaintiff's complaint asserts five counts against Defendants: Violation of 42 U.S.C. § 1983 (Count I); Conspiracy to Violate 42 U.S.C. § 1983 (Count II); Violation of Racketeer Influenced and Corrupt Organizations Act (RICO) and Tortious Conduct (Count III); Injunctive Relief as to Moratorium (Count IV); and Injunctive Relief as to Repeal of Cluster Housing Ordinances (Count V).

Unless otherwise noted, the following recitation of facts is undisputed:[1]

Parkview has an interest in a 16.75 acre parcel of land located in the City of Rockwood ("Rockwood"). (Defs.' 11/09/05 Mot. Br. at 1; Pl.'s 12/16/05 Resp. at 2.) This controversy arises from Parkview's attempts to develop that property in accordance with Rockwood's "cluster housing" provision of its zoning ordinances.

Rockwood has adopted a Zoning Ordinance pursuant to the City and Village Zoning Enabling Act, MCL 125.581 *et seq.* Under Rockwood's Zoning Ordinance, Parkview's property is zoned RA-2, Single-Family Residential. The minimum lot area in the RA-2 zoning district is 7,200 square feet with a minimum lot width of 60 feet. (Defs.' 9/29/05 Proposed Finding of Fact # 3; Pl.'s 9/30/05 Resp. at 1.) Prior to the filing of this lawsuit, under Rockwood's Zoning Ordinance, a land zoned for single-family development under the RA-1, RA-2 and RA-3 zoning classifications may also be developed under the different open space and cluster options permitted under Michigan law, MCL 125.584b. (Defs.' 9/29/05 Proposed Finding of Fact # 4; Pl.'s 9/30/05 Resp. at 1.)

---

[1] Where noted, some of the facts were asserted in connection with Plaintiff's motion for a Preliminary Injunction.

Rockwood's Zoning Ordinance creates a subdivision open space option, Section 5.2103, and a cluster development provision, Section 5.504, within single-family residential districts.  Both the subdivision open space option and cluster development provision are designed to allow for more creative approaches to residential development.  (Defs.' 9/29/05 Proposed Finding of Fact # 5; Pl.'s 9/30/05 Resp. at 1.) Since the open space option and cluster development provision of the Zoning Ordinance have been in effect, no property within the City of Rockwood has been developed under these options.  (Defs.' 9/29/05 Proposed Finding of Fact # 6; Pl.'s 9/30/05 Resp. at 1.)

While Parkview has submitted previous plans to Rockwood to develop its property for single family residences, Parkview has not filed any application for formal approval of its most recent plan to develop the property for "cluster housing."  (Defs.' 11/09/05 Mot. Br. at 1; Pl.'s 12/16/05 Resp. at 2-3.)[2]

During an April 4, 2005 Planning Commission meeting, several residents from the subdivision neighboring Parkview's property asked questions regarding Parkview's cluster housing project.  (Defs.' 11/09/05 Mot. Br. at 2; Pl.'s 12/16/05 Resp. at 5.) Similarly, during a Planning Commission meeting held in early May 2005, residents again asked questions regarding Parkview's development plans, and during a May 4,

---

[2]Defendants contend that Plaintiff only made informal proposals to Rockwood officials between 2002 and 2005, but Plaintiff asserts that it submitted formal applications for single family development with filing fees. (Defs.' 11/09/05 Mot. Br. at 1; Pl.'s 12/16/05 Resp. at 2-3.)  Because this dispute centers only around Plaintiff's previous plans for single family development, not cluster housing, the court deems this dispute immaterial.  For purposes of the current motions, however, the court accepts Plaintiff's version of the facts.

2005 City Council meeting several residents were present to object to Parkview's development plans.  (Defs.' 11/09/05 Mot. Br. at 2; Pl.'s 12/16/05 Resp. at 5.)   Around this time, a petition was presented to Rockwood, with over 500 signatures, to "remove Cluster Housing from the Cities [sic] zoning codes and to require developers to choose options that conform to the high standards that the City Planning Commission and City Council have required in the past" (the "Petition").  (Defs.' 11/09/05 Ex. C.)

At a May 18, 2005, City Council Meeting,[3] a resolution was unanimously approved which initiated a moratorium against the approval of any building permits for cluster housing for a period of 90 days.  (Defs.' 9/29/05 Proposed Finding of Fact # 16; Pl.'s 9/30/05 Resp. at 1.)  The moratorium provides, in pertinent part, that "the Planning Commission and the Building Official or other individual authorized to issue building permits for the City of Rockwood shall not issue any further building permits for the construction of cluster housing in the City of Rockwood until the expiration of this Resolution [90 days]."  (Moratorium, Pl.'s Ex. 121.)

Parkview contends that the moratorium was passed as a pressured response by Defendants to the receipt of the Petition.  (Pl.'s 12/16/05 Resp. at 6.)  Defendants contend that the moratorium was passed because the controversy surrounding Parkview's project drew Rockwood's attention to certain deficiencies in the cluster housing provisions of Rockwood's zoning ordinances.  (Defs.' Mot. Br. at 2.) Specifically:

---

[3]The Rockwood City Council is the legislative body for Rockwood.  (Defs.' 9/29/05  Proposed Finding of Fact # 14; Pl.'s 9/30/05 Resp. at 2.)  Parkview asserts that Rockwood's City Council has both legislative and administrative functions. (Pl.'s 9/30/05 Resp. at 1.)

4

(1)     there was no definition of cluster housing development in the ordinance;
(2)     the cluster housing ordinance was not a special or conditional use in residential districts;
(3)     the existing language did not refer to single unattached units with reduced setbacks and yard sizes as was thought by the Planning Commissioners and City Council members; and
(4)     there were no standards for reviewing cluster housing set forth in the zoning ordinances.

(*Id.*)  Plaintiff argues that these assertions in Defendants' brief are unsupported by any evidence, and that there were no discussions at the May 18, 2005 City Council meeting to substantiate the assertion that there were prior Council discussions of "any 'deficiencies' in the [sic] Section 5.504 []or any discussion of 'health, safety and welfare' issues before the Moratorium was adopted."  (Pl's 12/16/05 Resp. at 7.)

The court also accepts the following facts, asserted by Parkview, as undisputed: The moratorium was extended on August 3, 2005 for an additional 90 days, which would have expired on November 15, 2005.   On October 5, 2005, the City Council adopted Ordinance 427, which deleted Section 5.504 of the Zoning Ordinance "in its entirety."  (Pl.'s Ex. 126)  The moratorium, however, was extended for a second time for another 90 days on November 9, 2005, (until February 14, 2006).  (Pl.'s Resp. at 7-8.)

## II. STANDARD

### A.  Motion for Summary Judgment

Defendants have filed their motion under both Federal Rule of Civil Procedure 12 and Federal Rule of Civil Procedure 56.  The parties, however, rely on matters outside the pleadings and the court will therefore treat the motion as one filed under Rule 56.  .  *See* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters

5

outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a

6

manner most favorable to the nonmoving party.  *Dunigan v. Noble*, 390 F.3d 486, 492

(6th Cir. 2004) ("we must determine 'not whether there is literally no evidence, but

whether there is any upon which a jury could properly proceed to find a verdict for the

party producing it upon whom the *onus* of proof is imposed.'")  The court does not weigh

the evidence to determine the truth of the matter, but must determine if the evidence

produced creates a genuine issue for trial.  *Sagan v. United States*, 342 F.3d 493, 497

(6th Cir. 2003.

### B.  Motion to Amend

The decision whether to grant leave to amend the pleadings is governed by

Federal Rule of Civil Procedure 15.  Rule 15 provides that, after a responsive pleading

has been filed, "a party may amend the party's pleading only by leave of court or by

written consent of the adverse party; and leave shall be freely given when justice so

requires."  Fed. R. Civ. P. 15(a).  "In the decision whether to permit an amendment,

some of the factors which may be considered by the trial court are undue 'delay in filing,

lack of notice to the opposing party, bad faith by the moving party, repeated failure to

cure deficiencies by previous amendments, undue prejudice to the opposing party, and

futility of amendment.'"  *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130

(6th Cir. 1990) (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.

1973)).

### III.  DISCUSSION

Before beginning its analysis of the individual claims at issue here, the court

reiterates what was noted in its order denying Plaintiff's application for a preliminary

injunction:  Michigan courts review zoning challenges on an extremely deferential basis.

To that end, Michigan courts have held:

> [W]e deem it expedient to point out again, in terms not susceptible of misconstruction, a fundamental principle: this Court does not sit as a superzoning commission. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises.

*Essexville v. Carrollton Concrete Mix, Inc.*, 673 N.W.2d 815, 820 (Mich. Ct. App. 2003)

(quoting *Brae Burn, Inc. v. Bloomfield Hills,* 86 N.W.2d 166 (Mich. 1957)).

## A.  Individual Immunity

Plaintiff seeks relief against various individual defendants who are simply

immune from suit under the theories asserted in Plaintiff's complaint.  The city council

members are local legislators who are entitled to absolute immunity for their legislative

activities.  *Bogan v. Scott-Harris,* 523 U.S. 44 (1988) ("Regardless of the level of

government, the exercise of legislative discretion should not be inhibited by judicial

interference or distorted by the fear of personal liability.").  In *Bogan*, the Supreme Court

held that, because local legislators are immune from suit under common law, they are

also absolutely immune from liability under § 1983 for their legislative actions.  *Id.* at 49-

50.  "Whether an act is legislative turns on the nature of the act, rather than on the

8

motive or intent of the official performing it." *Id.* at 54.  In applying this rule to the facts before the Court, the *Bogan* Court found that the legislators' actions in voting for enactment of an ordinance and the mayor's action in signing that ordinance into effect were "quintessentially" and "formally" legislative actions for which the individual defendants were entitled to immunity.  *Id.* at 55.

The facts of this case are nearly identical and thus require the court to grant summary judgment to the individual defendants.  Under Michigan law, "[t]he power to zone and rezone property is a legislative function."  *Essexville v. Carrollton Concrete Mix, Inc.,* 673 N.W.2d 815, 819 (Mich. Ct. App. 2003).  The court is unpersuaded by Plaintiff's argument that "the moratorium resolution and its subsequent extensions were aimed at Plaintiff, alone, and as such they are *administrative*, not legislative, actions of the City Council. (Pl.'s Resp. at 14 (emphasis in original).)  Even if Plaintiff has established a triable issue with respect to the assertion that the legislation was aimed at Plaintiff, this would not mean the Defendants were not entitled to legislative immunity. To allow the jury to assess the veracity of Plaintiff's assertion would necessarily involve an inquiry into the motives behind the passage of the ordinance, in contravention of the rule in *Bogan*.  *See Bogan*, 523 U.S. at 54.  Under *Bogan*, the act itself is examined, not the reasons behind the act.  *Id.*  Indeed, in *Bogan*, the Supreme Court addressed a situation where the individual defendants had passed legislation that eliminated a department of which the plaintiff was the sole employee.  *See Bogan*, 523 U.S. at 47. The Court held that this act (although similarly aimed at one person) was legislative.  *Id.* Here, there can be no factual dispute that, regardless of whatever alleged motives

9

Plaintiff attributes to them, the individual defendants were performing quintessentially legislative actions for which they are entitled to immunity.[4]

### B. RICO Claim

All Defendants are also entitled to summary judgment on Plaintiff's claims that they violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").

RICO creates a cause of action for "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). There are four provisions listed in § 1962, every one of which requires proof of a "pattern of racketeering," collection of an unlawful debt, or conspiracy engage in a "pattern of racketeering or collection of an unlawful debt. A pattern of racketeering is satisfied by showing (1) a relationship between the predicate acts and (2) the threat of continued activity. *Snowden v. Lexmark Intern., Inc.,* 237 F.3d 620, 622 (6th Cir. 2001) (citing *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 229 (6th Cir. 1997)). In this case, Plaintiff admits that it "does not accuse any of the Defendants of 'racketeering,' but their conspiracy is characterized as a 'corrupt activity' under . . . RICO." (Pl.'s Resp. At 10.) Plaintiff, however, does not provide any citation for the proposition that alleging "corrupt activity" is enough to create a cause of action under RICO. Even subsection (d) of §

---

[4]The court also rejects Plaintiff's argument that Michigan has abolished common law immunity for local legislators. (*See* Pl.'s Resp. at 14.) As Defendants point out, MCL 691.1407(5) provides that "[a] judge, a legislator, and the elective or highest appointive executive official *of all levels of government* are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority. M.C.L.A. 691.1407 (5) (emphasis added). The Michigan Court of Appeals has applied this provision to grant immunity to township board members acting within the scope of their legislative authority. *See Armstrong v. Ypsilanti Charter Township,* 640 N.W.2d 321, 333 (Mich. Ct. App 2001).

10

1962 requires proof of a conspiracy to violate subsections (a) (b) or (c), which in turn all require proof of a pattern of racketeering.[5]  *See* 18 U.S.C. § 1962.   Plaintiff's admission that it has not alleged "racketeering" is therefore fatal to its RICO claim.

### C.  42 U.S.C. § 1983

Plaintiff's original complaint asserted an action "under 42 USC Sec. 1983 for deprivation of Plaintiff's property rights . . . without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution."  (Comp. at ¶ 1.) While its complaint was somewhat unclear, it appeared that Plaintiff was asserting a takings claim, a substantive due process claim and, perhaps, a procedural due process action in connection with the passage of the moratorium.  (*See* Comp. at ¶¶ 29A-C & 31A-D.)  In response to Defendants' motion for summary judgment, Plaintiff has made certain statements that rather confuse the record with respect to the exact nature of the claims being asserted.[6]  Moreover, Plaintiff has also brought a motion to amend the complaint, in which it seeks to add allegations regarding the passage of Ordinance 427, which repealed the Cluster Housing ordinance, and the extension of the moratorium.

---

[5]Plaintiff argues that "Defendant's activities, in concert with others, evidence a conspiracy to violate the Fair Housing Act of 1968, 42 USC 3601-3631 and, thus, they would interfere with commerce in violation of 18 USC Par. 1951, a statute referred to in 18 USC Par. 1961."  (Pl.'s Resp. at 10.)  Even if the court were to interpret this statement as asserting a cause of action under 18 U.S.C. 1962(d), conspiracy to violate RICO, Plaintiff does not allege the necessary two or more predicate acts to withstand a summary judgment motion.  *See* 18 U.S.C. 1961(5).

[6]For example, on one hand Plaintiff argues that it is asserting a facial challenge, rather than an "as applied" challenge, while on the other hand Plaintiff argues that the application of the repeal of Ordinance 5.504 to Plaintiff is unlawful because Plaintiff cannot practically develop its property under the conventional single-family ordinance. (*See* Pl.'s Resp. at 11-12.)

11

(*See* Pl.'s Ex. 126.)[7]   Because counsel's current assertions are, to some extent, incompatible with the claims which were originally brought in the first complaint and which Plaintiff seeks to bring in the amended complaint, the court will analyze both the motion for summary judgment and the motion to amend under every conceivable theory which Plaintiff could be asserting.

## 1.  Procedural Due Process Claim

To the extent that Plaintiff makes a procedural due process claim with respect to the moratorium, or seeks to make a procedural due process claim with respect to the repeal of the cluster housing provision, Plaintiff's claims must fail because there is no dispute that Plaintiff does not have a protectable property interest in the previous zoning classification.[8]  Thus, the court holds that (1) Defendants are entitled to summary

---

[7]  Plaintiff's original Complaint asserted a violation under § 1983 due to the passage of the May 12, 2005 moratorium, (*see* Comp. at ¶¶ 23-24), and the probable repeal of the cluster housing provisions of Section 5.504 (*id.* at ¶¶ 41A-C). In light of these allegations, and the liberal "notice pleading" rule, the court is not entirely persuaded that the proposed amended complaint, which adds allegations regarding the extension of the moratorium and passage of Ordinance No. 427, is even necessary.

[8]  The court notes that there is some authority for the proposition that Plaintiff's procedural due process claim would be "instantly cognizable" in federal court. *See Seguin v. City of Sterling Heights,* 968 F.2d 584, 589 (6th Cir. 1992); *Nasierowski Bros. Invest. Co. V. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991) ("If the claimed injury is the infirmity of the process, neither a final judgment nor exhaustion of administrative remedies is required.")(alterations and quotations omitted).  *But see Bigelow v. Michigan Department of Natural Resources*, 970 F.2d 154, 159 (6th Cir. 1992) (distinguishing *Nasierowski* and requiring "finality" where, as here, the plaintiffs did "not present a pure claim of procedural due process, but instead [presented] several constitutional claims"); *J-II Enterprises v. Bd. of Commissioners of Warren County*, 135 Fed. Appx. 804, 807 (6th Cir. 2005) ("As Plaintiffs' due process claim is ancillary to their just compensation claim, it too is unripe for review.").  While the court is inclined to adopt the reasoning of *Bigelow* and hold that Plaintiff's procedural due process claims are not ripe for review, the court need not definitively decide this issue because, in any

judgment on this claim asserted in Plaintiff's original complaint, and (2) any attempt to amend the complaint based on this claim would be futile.

"The requirements of procedural due process apply only to deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972).  Thus, Plaintiff must establish the existence of a property right in order to assert a violation of procedural due process.  *Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000).  The dimensions of a protectable property right are not defined by the United States Constitution, but rather by an independent source such as state law.  *Id.* (citing *Bd. of Regents*, 408 U.S. at 577).  "Under Michigan law, a landowner does not possess a vested property interest in a particular zoning classification unless the landowner holds a valid building permit and has completed substantial construction."  *Seguin v. City of Sterling Heights,* 968 F.2d 584, 589 (6th Cir. 1992) (citing *City of Lansing v. Dawley*, 247 Mich. 394, 396-97,  (1929)).

In this case, there is no dispute that Plaintiff has "not yet filed a request for 'formal approval' of its cluster housing project," sought a building permit or began substantive construction.  (Pl.'s Resp. at 2)  Plaintiff itself characterizes its presentations to the Planning Commission as "pre-formal."  (*Id.*)  As stated by the Sixth Circuit in *Seguin*, "[b]ecause plaintiffs in the case at bar have neither applied for a building permit, nor have begun substantial construction on the property, they do not have a vested right

_____

event, Plaintiff does not have a protectable property interest such as to allow a procedural due process claim to proceed.

13

in the previous zoning classification." *Seguin*, 968 F.2d at 591. Accordingly, Plaintiff cannot assert a procedural due process claim. *See id.* at 591-92. ("As plaintiffs have no vested property right, they do not have standing to challenge the zoning ordinance on procedural due process grounds.").

## 2. Just Compensation Takings Claim

To the extent that Plaintiff is asserting that the moratorium, either when it was originally passed or when it was extended, constitutes an unconstitutional "taking" of Plaintiff's property without just compensation, Defendants are entitled to summary judgment on this claim because Plaintiff's claim is not yet ripe for review. Similarly, to the extent that Plaintiff seeks to amend the complaint to allege that the repeal of the cluster housing provision constitutes a "taking" of Plaintiff's property, any such amendment would be futile for the same reason.

The Sixth Circuit has held that "[a] claim that a government regulation constitutes a taking of property in violation of the fifth amendment will not be ripe for adjudication 'until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" *Seguin v. Sterling Heights,* 968 F.2d 584, 587 (6th Cir. 1992) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186 (1985)). This requires that a plaintiff asserting a fifth amendment takings action with respect to a zoning decision must show that he has (1) applied for and been denied a variance and (2) brought a just compensation claim to seek redress under state law. *Id.* "The rationale for [requiring exhaustion] in taking cases is that the federal court cannot know

14

what has been afforded until state remedies have been utilized." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1214-15 (6th Cir. 1992) (stating also that until the plaintiff exhausts his state remedies "the federal court cannot determine whether a taking has occurred, whether compensation is due, or, if it has been afforded, whether it is just.").

In this case it is undisputed that Parkview has never applied for a building permit or sought a variance to develop its cluster housing project.  It is also not contested that Parkview has never applied for or been denied just compensation by the State of Michigan.  Thus, a claim under the Fifth Amendment that the moratorium or the repeal of the cluster housing ordinance constitutes a taking without just compensation is not yet ripe for review by this court and must be dismissed.  *Shelly Materials, Inc. v. Bd. of Zoning Appeals*, No. 04-4234, 2005 WL 3478143, *3 (6th Cir. Dec. 20, 2005) ("The takings claim is not ripe, and an unripe claim must be dismissed for lack of subject matter jurisdiction."); *see also Pearson*, 961 F.2d at 1214 ("In cases where plaintiff claims that the zoning is so stringent as to constitute a taking without just compensation, the Supreme Court requires what amounts to exhaustion of state judicial remedies, including the bringing of an inverse condemnation action, if the state affords such a remedy."); *J-II Enterprises, LLC v. Bd. of Commissioners of Warren County*, 135 Fed. Appx. 804, 807 (6th Cir. 2005) ("Unless plaintiffs have pursued state remedies, their case is not ripe because 'the State's action . . . is not 'complete' until the State fails to provided adequate compensation for the taking.'") (quoting *Williamson,* 473 U.S. at 195); *Silver v. Franklin Tp. Bd. of Zoning Appeals,* 966 F.2d 1031, 1034 (6th Cir. 1992) (same).

### 3.  Due Process Takings Claim

In addition to a "just compensation" takings claim, Parkview could be asserting a claim that the moratorium or repeal of the cluster housing provision goes "too far and destroys the value of [its] property to such an extent that it amounts to a taking by eminent domain without due process of law."  *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1215-1216 (6th Cir. 1992) (distinguishing between "just compensation" takings claims and "due process takings" claims).

While the distinction between these two types of claims is sometimes blurry, under a "just compensation" takings claim the plaintiff seeks monetary relief while under a "due process takings" claim the plaintiff seeks invalidation of the zoning regulation.  *Id.*  The *Pearson* court held that a "due process takings" claim occurs where the plaintiff claims the zoning "applied to his property goes too far and destroys the value of his property to such an extent that it amounts to a taking by eminent domain without due process of law."  *Id.*; *see also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 535 U.S. 302, 326 (2002) (noting that Justice Holmes first recognized that regulations that go "too far" will result in a taking) (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).  The Supreme Court has held that regulatory takings cases are characterized by *ad hoc*, highly factual inquiries.  *See id.* at 322.

In this case, the court finds as a matter of law that Rockwood's moratorium did not amount to a regulatory taking of Parkview's property.  First, Parkview's complaint and amended complaint only challenge the moratorium and repeal of the cluster

16

housing provision, while the property at issue was at all times classified consistent with the underlying zoning use, RA-2, Single-Family Residential. Moreover, as noted in the court's October 6, 2005 "Order Denying Plaintiff's Application for Preliminary Inunction," the court is not persuaded that either the moratorium or the repeal of the cluster housing provision, both of which allow Rockwood time to review and possibly amend its cluster housing ordinances, go "too far" and thus constitute a taking. Indeed, in *Tahoe-Sierra*, the Supreme Court upheld a far more restrictive moratorium and noted that:

> Unlike the "extraordinary circumstance" in which the government deprives a property owner of all economic use, . . . moratoria like Ordinance 81-5 and Resolution 83-21 are used widely among land-use planners to preserve the status quo while formulating a more permanent development strategy. In fact, the consensus in the planning community appears to be that moratoria, or "interim development controls" as they are often called, are an essential tool of successful development."

*Id.* at 337-338. Consistent with this authority, the court finds that the moratorium and repeal of cluster housing provision do not, as a matter of law, constitute a "taking" of its Parkview's property.[9]

_____

[9] As the court has previously noted, the United States Supreme Court has recognized the common and legitimate use of moritoria. (*See* 10/06/05 Order at 11 n.6.) *See Tahoe-Sierra*, 535 U.S. at 337-338. Further, while the court has not located any Michigan case directly on point, Michigan courts appear to at least implicitly recognize the validity of moratoria, especially where, as here, they are reasonable in scope and duration. *See, e.g., Adams Outdoor Advertising v. East Lansing*, 483 N.W.2d 38, 44 (Mich. 1992) (Levin, J., dissenting) ("The city council began implementing the recommendations by enacting, in August, 1973, a moratorium that barred further placement of signs pending adoption of a new sign code. The moratorium remained in effect until the new code was enacted.")*; Central Advertising Co. v. St. Joseph Tp.*, 337 N.W.2d 15, 18 (Mich. Ct. App. 1983) ("Although moratoria are not regarded favorably by the courts, this moratorium was to last only until a new ordinance relating to off-premises signs was adopted and presented to the court."); *Heritage Hill Ass'n, Inc. v. City of Grand Rapids*, 211 N.W.2d 77, 79 (Mich. Ct. App. 1973) ("The amended building code in the case at bar did not alter the provisions of the Grand Rapids Zoning Ordinance but rather only placed a moratorium on the issuance of

### 4. Equal Protection Claim

Parkview also appears to be asserting in its original complaint, and more directly in its proposed amended complaint, a Fourteenth Amendment equal protection claim. Parkview argues that the moratorium and the repeal of the cluster housing provision is directed solely at Parkview in a discriminatory fashion. Parkview claims that Defendants are attempting to halt Parkview's development because its housing is perceived to be primarily for a low income or minority class of persons.

First, the court finds that the equal protection claim is not ripe for review. Specifically, the court finds that Parkview's equal protection claim is ancillary to its just compensation claim, which the court has already held is not ripe for review. "An ancillary equal protection claim is not ripe for review unless the just compensation claim is ripe." *J-II Enterprises, LLC v. Bd. of Commissioners of Warren County*, 135 Fed. Appx. 804, 807 (6th Cir. 2005) (citing *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). Moreover, even if Parkview's claim were ripe, the court also finds that Parkview has failed to assert facts sufficient to establish an equal protection violation associated with the moratorium or the repeal of the cluster housing provision because Parkview has failed to demonstrate that, compared to any other similarly situated developer, it has been treated differently. *See Silver v. Franklin Tp. Bd. of Zoning Appeals,* 966 F.2d 1031, 1036-37 (6th Cir. 1992) ("Although [the plaintiff] asserts that the Board has issued conditional zoning certificates to other condominium developments, he has presented

---

building permits in a particular district of the city for a reasonably limited time."); *Guenther v. Plymouth*, No. 239902, 2003 WL 22204735, *1 (Sept. 23 ,2003) (noting existence of a moratorium preventing an application).

18

no evidence that these other developments were similarly situated to his development.

Accordingly, [the plaintiff] has not established an equal protection claim.").  The court

will therefore grant Defendant's motion to dismiss and deny Plaintiff's motion to amend

related to any equal protection claim.[10]

### 5.  Substantive Due Process Claim

There are two types of substantive due process claims in zoning cases, facial

and "as applied."   *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir.

1992).  Plaintiff's complaint appeared to assert an "as applied" substantive due process

claim, but Plaintiff now contends that it has at all times intended to assert only a facial

challenge.  (Pl.'s Resp. Br. at 25).  While the term "substantive due process" is used in

various contexts, the Sixth Circuit has generally defined it as "[t]he doctrine that

governmental deprivations of life, liberty or property are subject to limitations regardless

of the adequacy of the procedures employed."  *Pearson*, 961 F.2d at 1216.  To that end,

"[t]he right not to be subject to 'arbitrary or capricious' action by a state either by

legislative or administrative action is commonly referred to as a 'substantive due

process right' and the Supreme Court has observed that "citizens have a substantive

due process right not to be subjected to arbitrary or irrational zoning decisions."  *Id.* at

1217.

---

[10] To the extent that Parkview argues the zoning ordinance is not facially neutral, the court cannot accept this argument.  As noted in the court's October 6, 2005 order, the moratorium applies to all building permits for the development of cluster housing. That Parkview *may* be the only developer considering cluster housing development is incidental.

19

Even if a just compensation claim is not ripe, a substantive due process claim can be ripe. *J-II Enterprises, LLC v. Bd. of Commissioners of Warren County*, 135 Fed. Appx. 804, 807.  Thus, despite the fact that Plaintiff has not exhausted its state remedies, its substantive due process claim may be ripe where, as here, Plaintiff asserts a facial challenge.  Facial challenges, as opposed to "as applied" challenges, do not require a plaintiff to meet the *Williamson* finality requirement which the provides that the claim is not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" *Seguin,* 968 F.2d at 587, 588 ("Where a plaintiff challenges a zoning regulation 'as applied,' as opposed to making a facial challenge to the regulation, the courts have held that the *Williamson* final decision requirement must be met.").

Nonetheless, Plaintiff cannot show that it has a property interest in the development of its land under the prior cluster housing provisions.  "To establish a substantive due process claim in the context of land-use regulations, plaintiffs must prove they possess a constitutionally protected property or liberty interest."  *J-II Enterprises,* 135 Fed. Appx. at 807 (citing *Silver v. Franklin Tp. Bd. of Zoning Appeals,* 966 F.2d 1031, 1036 (6th Cir. 1992)).  "To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest."  *Silver*, 966 F.2d at 1036.

As discussed above, Parkview has no vested right to build its proposed construction sufficient to prevent Rockwood from amending its zoning ordinances.  The

20

Michigan Court of Appeals has set forth the following principles in determining whether

a property right has arisen:

> Under all of the cases cited herein a building permit, or its counterpart, a permit to commence operations, is the *sine qua non* for obtaining "vested rights".  An approved site plan is not a permit to build.  The features of reliance and estoppel which may give rise to a vested right under a building permit do not necessarily arise under an approved site plan which, by statute, merely signifies that the proposed use complies with local ordinances and federal statutes. M.C.L. § 125.286e; M.S.A. § 5.2963(16e).  Furthermore, the grant of a permit to build does not in itself confer on the grantee "vested rights". Actual construction must commence. The making of preparatory plans, landscaping and the removal of an existing structure is not sufficient.  Where the building permit has been applied for but has not been issued, "vested rights" are not acquired even though substantial sums have been expended by the applicant.

*Schubiner v. West Bloomfield Twp.*,  351 N.W.2d 214, 219 (Mich. Ct. App. 1984),

(internal citations omitted).  In this case, no building permit has been obtained, or even

applied for, and no construction has begun.  Although Parkview argues that it received

"encouragement" for its project, it cites no authority for the proposition that

encouragement is enough to obtain a vested property interest.  Indeed, under

*Schubiner*'s clearly articulated principles, Parkview does not have the requisite vested

property rights so as to bar either the passage or the application of amended zoning

ordinances.

Moreover, even if Plaintiff could establish a property interest, its claims must

nonetheless be dismissed because Plaintiff cannot show that Defendant's actions were

arbitrary or capricious.  Plaintiff asserts that the challenged action in this case, the

imposition and extension of the moratorium and/or the repeal of the cluster housing

provision, constitutes "administrative" rather than legislative action.  As discussed

21

above, however, the court disagrees.  Both the moratorium and the cluster housing

repeal are prospective policy making acts that, at least on their face, apply to the

general public, rather than to a specific piece of property.  *See Pearson,* 961 F.2d at

1222.  Accordingly, the court will analyze the asserted claims under the more deferential

review for legislative zoning actions.  *Id.* (recognizing that administrative decisions are

reviewed under a higher degree of scrutiny than legislative decisions).

In reviewing an *administrative* decision, the Sixth Circuit has explicitly stated that

> it is extremely rare for a federal court properly to vitiate the action of a
> state administrative agency as a violation of substantive due process.
> The vast majority of such attacks may readily be disposed of on summary
> judgment . . ., thus keeping interference by federal courts with local
> government to a salutary minimum.

*Pearson,* 961 F.2d at 1222.  A review of a *legislative* decision is even more deferential:

> The power of local governments to zone and control land use is
> undoubtedly broad and its proper exercise is an essential aspect of
> achieving a satisfactory quality of life in both urban and rural communities.
> But the zoning power is not infinite and unchallengeable; it 'must be
> exercised within constitutional limits.' ··· Accordingly, it is subject to judicial
> review; and as is most often the case, the standard of review is
> determined by the nature of the right assertedly threatened or violated
> rather than by the power being exercised or the specific limitation
> imposed···· "Where *property interests* are adversely affected by zoning, the
> courts generally have emphasized the breadth of municipal power to
> control land use and have sustained the regulation *if it is rationally related
> to legitimate state* concerns and does not deprive the owner of
> economically viable use of his property···· "Beyond that, *as is true of other
> ordinances,* when a zoning law infringes upon a protected liberty, it must
> be narrowly drawn and must further a sufficiently substantial government
> interest."

*Id.* at 1223 (emphasis in original) (citations omitted).   The court's review under these

principles is limited to "whether the legislative action is rationally related to legitimate

22

state land use concerns," that is, "whether it is clearly arbitrary and unreasonable, in the very restricted sense that it has 'no substantial relation to the public health, safety, morals or general welfare.'" *Id.* (citations omitted).

In this case, even if Parkview had a protectable property interest in its development project, the court finds that Rockford's actions do not violate this standard. While Plaintiff asserts that Defendants' motives for passing the moratorium and repealing the cluster housing provision were improper and not well-founded, the court finds as a matter of law that Defendants' actions were not "clearly arbitrary and unreasonable, in the very restricted sense that it has 'no substantial relation to the public health, safety, morals or general welfare.'" *Id.; see also Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1224 (6th Cir. 1992) ("Plaintiff asserts that the protesting neighbors are guilty of tunnel vision in not welcoming the restaurant to their neighborhood, but concerns about traffic and the deterioration of the neighborhood are rationally related to the goals of zoning.*").* Accordingly, Defendants are entitled to summary judgment on this claim, and any attempt to amend Plaintiff's complaint to add additional allegations with respect to the substantive due process claim would be futile.

### D.  State Law Claims

The Sixth Circuit has directed that where federal claims are dismissed prior to trial, pendent state law claims should also normally dismissed.  *See Musson Theatrical, Inc. V. Fed. Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996).  Similarly, in zoning cases, where the federal claims are dismissed as unripe, the supplemental claims should also be dismissed for lack of jurisdiction.  *J-II Enterprises*, 135 Fed. Appx. at

23

808; *see also Bigelow v. Michigan Department of Natural Resources*, 970 F.2d 154, 160 (6th Cir. 1992). Thus, to the extent that Plaintiff's complaint, or proposed amendment complaint, seeks to assert a cause of action under Michigan law (for "exclusionary zoning" or otherwise), the court lacks jurisdiction over any such claim.

### E. Motion to Compel

Also pending before the court is Plaintiff's "Motion Under FCP Rule 37 and LR 37.1 for Order Compelling Compliance with Discovery Request." Having reviewed the briefing, the court finds that Defendant has complied with the requirements imposed upon it by Fed. R. Civ. P. 26(e). Moreover, Plaintiff has not shown that additional discovery is necessary to fully respond to Defendant's motion to dismiss or how any such additional discovery would result in a different disposition of this motion. *See generally* Fed. R. Civ. P. 56(f). Plaintiff's motion will therefore be denied.

### IV. CONCLUSION

IT IS ORDERED that Defendant's "Motion to Dismiss, for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) or 12(b)(6)" [Dkt. # 26] is GRANTED. IT IS FURTHER ORDERED that Plaintiff's "Motion for Leave to File an Amended and Supplemental Complaint" [Dkt. # 36] and Plaintiff's "Motion Under FCP Rule 37 and LR 37.1 for Order Compelling Compliance with Discovery Request" [Dkt. # 38] are DENIED.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: February 28, 2006

24

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 28, 2006, by electronic and/or ordinary mail.

S/Lisa Wagner

Case Manager and Deputy Clerk

(313) 234-5522